[Cite as *Harper v. Ventra Sandusky, L.L.C.*, 2020-Ohio-3490.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Chanel Harper

    Appellant

v.

Ventra Sandusky, LLC, et al.

    Appellees

Court of Appeals No. E-19-056

Trial Court No. 2019 CV 0187

**DECISION AND JUDGMENT**

Decided: June 26, 2020

* * * * *

Chanel Harper, pro se.

Thomas J. Gibney and Emilie K. Vassar, for appellees.

* * * * *

**OSOWIK, J.**

### Introduction

{¶ 1} This is an employment case filed in the Erie County Court of Common Pleas by plaintiff-appellant, Chanel Harper, against defendant-appellees, Ventra Sandusky, LLC, and its human resources manager, Chris Estep. Harper alleged that appellees discharged her because she is disabled, in violation of Title I of the Americans with Disabilities Act and that they retaliated against her for engaging in protected activity, in

violation of Title VII of the Civil Rights Act of 1964. Appellees filed a motion for summary judgment, arguing that Harper was not Ventra's employee and therefore it could not be held liable; that Estep could not be held personally liable as a matter of law; and that Harper failed to present any prima facie evidence of unlawful conduct. The trial court granted appellees' motion, and Harper filed this accelerated appeal. As set forth below, we affirm.

## Background

{¶ 2} Ventra Sandusky ("Ventra") manufactures automotive components in Sandusky, Ohio. Chris Estep is the human resources manager there.

{¶ 3} According to the record, Harper was hired by Ventra and began working for the company on January 30, 2017, as a "production services" employee. As part of the hiring process, Harper provided Ventra with a letter from her physician indicating that she was epileptic, that her condition was "well controlled," and that Harper was "able to perform the duties required." Three days into the job, on February 2, 2017, Harper was terminated for unsatisfactory job performance.

{¶ 4} On May 5, 2017, Harper filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Charge No. 846-2017-14448). The EEOC dismissed the charge and issued her a "Notice of a Right to Sue." Harper did not pursue the claim into court.

{¶ 5} Following her discharge, Harper's name was added to Ventra's "do not hire" list. As the name suggests, the "do not hire" list is comprised of names of individuals

2.

who are "ineligible for employment at Ventra Sandusky for a variety of reasons, including * * * having been terminated for cause." The list serves as a general tool to screen out ineligible employees who "are thus not permitted on its premises."

{¶ 6} Ventra occasionally requires the use of a third-party contractor to provide quality control services. In June of 2017, Ventra contracted with The PIC Group to provide "containment inspections" at its Sandusky facility. According to Ventra, it "provided no input into the number of employees [PIC] utilized or the terms and conditions of employment for [PIC] employees." On the other hand, Ventra insists that it required all contractors, including PIC, to "verify that the employees it brings to the facility are not on [the do not hire] list."

{¶ 7} On June 15, 2017, PIC hired Harper to work at the Ventra facility as part of its quality control contract with Ventra. PIC brought Harper and others to Ventra on Saturday, June 17, 2017, to work the third shift. According to Ventra, PIC "failed to verify [the employees'] eligibility until the following Monday, June 19, 2017." (Estep affidavit at ¶ 15). At that time, Ventra's "plant security informed the PIC site supervisor that Ms. Harper was on the 'do not hire' list and thus not permitted on Ventra premises. Plant security assisted PIC in escorting Ms. Harper out of the plant." (Estep Aff. at ¶ 15; Ex. C at 6).[1]

---

[1] Ventra relied upon a third-party contractor to provide security services.

3.

{¶ 8} Harper alleges a similar version of events. In handwritten notes attached to her complaints, Harper claimed that, "my [PIC] manager said he wanted to talk to me when I got off. He said * * * the head of security at Ventra said I was not allowed on the property, so they walked me out, and said don't return." Harper's notes also indicate that her PIC manager immediately offered to reassign her to a different job—at the Whirlpool factory in Clyde, Ohio—but she was ultimately terminated for cause by PIC, based upon her conduct as she exited the Ventra facility.

{¶ 9} On April 5, 2018, Harper filed a charge with the EEOC against Ventra. Harper claimed that Ventra terminated her—in June of 2017—because she is disabled, in violation of the Americans with Disabilities Act of 1990 (the "ADA"), and that it retaliated against her for filing the previously-referenced race claim with the EEOC, in violation of Title VII of the Civil Rights Act of 1990 ("Title VII"). Nearly one year later, on March 27, 2019, the EEOC terminated its processing of the charge and issued Harper a right to sue letter, at Harper's request. [2]

{¶ 10} On April 2, 2019, Harper filed a complaint in the Erie County Court of Common Pleas against Chris Estep. The next day, she filed an amended complaint

---

[2] Copies of Harper's EEOC charges and related file materials were made part of the trial record by appellees. Also included were materials pertaining to a third EEOC charge (disability discrimination) filed by Harper against Ventra on July 21, 2017. (Charge No. 846-2017-27958). Like the race charge, this charge pertained to Harper's dismissal by Ventra in February of 2017, and it too was dismissed by the EEOC. Harper did not pursue the claim into court.

4.

against Ventra. The pro se complaints, while rambling and difficult to comprehend, assert violations of federal law only, under the ADA and Title VII, and not their state-law counterparts set forth under R.C. 4112.

{¶ 11} Appellees filed a motion for summary judgment, based in part on the sworn affidavit of Chris Estep. Appellees argued that they were entitled to judgment as a matter of law because Harper's claims arose from her employment by PIC, not Ventra; because Estep could not be held individually liable under either statute; and because Harper failed to produce any prima facie evidence of discrimination or retaliation. By judgment journalized on October 22, 2019, the trial court granted appellees' motion, without comment.

{¶ 12} Harper appealed, pro se, and raises four assignments of error for our review.

1. Ms. Harper claims against Ventura LLC, et al should be granted liability and plead Ventura Sandusky LLC, et al was my employer at the time also for Tittle VII and ADA. [sic]

2. Ms. Harper Americans with Disabilities Act (ADA) claims against Sandusky Ventura LLC, should be granted. [sic]

3. Ms. Harper Tittle VII retaliation claim should be granted. [sic]

4. Ms. Harper should be granted backpay and other remedies compensatory damages and punitive damages.

## Law and Analysis

{¶ 13} Initially, we must note that Harper's three-page, handwritten brief does not comply with the rules for filing briefs under App.R. 16(A). For example, it does not include a table of contents or a table of authorities, with references to the pages of the brief where cited, in violation of App.R. 16(A)(1) and (2). In fact, the brief does not cite to any authorities at all, including any cases or statutes. It does not include a statement of the issues presented for review, as required by App.R. 16(A)(4), or a brief statement of the case, as mandated by App.R. 16(A)(5), or a conclusion stating the precise relief sought, as required by App.R. 16(A)(8). Perhaps most importantly, the brief does not contain "the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of [those] contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies," as required by App.R. 16(A)(7). If an appellant fails to advance such an argument, a court of appeals may disregard the assignment of error. App.R. 12(A)(2). Indeed, appellate courts "are not obligated to search the record or formulate legal arguments on behalf of the parties, because appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them." (Quotations omitted). *Risner v. Ohio Dept. of Nat. Res., Ohio Div. of Wildlife,* 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 28.

{¶ 14} Dismissal of this case for the multiple deficiencies in Harper's brief is warranted, as courts may grant pro se litigants reasonable latitude but cannot completely

6.

disregard the appellate rules to accommodate a litigant who fails to obtain legal counsel. *State v. Bolton*, 2d Dist. Montgomery No. 27463, 2017-Ohio-8903, ¶ 13. However, in the interests of justice, we will briefly address those issues raised by Harper that are decipherable and cogent, rather than striking the brief or summarily dismissing the appeal.

{¶ 15} This court reviews a grant of summary judgment de novo. That is, we will consider the evidence as if for the first time, using the standard set out in Civ.R. 56. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29. A court may grant summary judgment only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and, viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party. *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).

**Harper Failed to Establish that Either Appellee May be Held Liable**

{¶ 16} In order to bring an ADA or a Title VII claim against Ventra, Harper must prove the existence of an employer-employee relationship. *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 992, n.2 (6th Cir.1997) (Noting that the ADA and Title VII define employer "essentially the same way"). Harper concedes that, at the time of her June 2017 discharge, she was PIC's employee, and not a direct employee of Ventra. See Brief at 2. ("[T]his temp agency called (PIC) * * * [was] hiring for Ven[tra] Sandusky

7.

LLC. * * * They hired me."). Nonetheless, in her first assignment of error, Harper claims that "Ventra was [her] employer" for purposes of imposing liability. Harper offers no evidence in support of her claim.

{¶ 17} "Although a direct employment relationship provides the usual basis for liability under the * * * ADA [and Title VII], courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an 'employer' under those statutes." *Swallows* at 993. In other words, a plaintiff may have more than one employer for the purpose of establishing liability. In *Swallows,* the court examined three theories under which an employment relationship may be found. For example, two entities may be so "interrelated" that they may be considered a "single employer" or an "integrated enterprise." Alternatively, courts may consider whether one defendant has control over another company's employees sufficient to show that the two businesses are acting as a "joint employer" of those employees. Finally, a third approach examines whether the entity that engaged in unlawful conduct "was acting as the agent of another company, which may then be held liable as the plaintiff's employer." (Citations omitted.) *Swallows* at 993.

{¶ 18} Ventra argues that there is no evidence to show that it qualified as Harper's employer under any of those theories. In support, Ventra relies upon the affidavit of Estep, who proffered sworn testimony that:

8.

· PIC brought their own employees to perform the containment inspections, and Ventra did not "share common operations, management, ownership, or control" with PIC. (Estep Aff. At ¶ 12).

· Ventra provided no input into the number of employees PIC used to fulfill the containment inspection contract. Similarly, Ventra had no input regarding the hiring and firing process or the terms and conditions of employment for PIC's employees. PIC also employed its own site supervisors and provided its own training. (Estep Aff. At ¶ 13).

· No Ventra personnel supervised or played any role in removing Harper from the premises in June of 2017. (Estep Aff. At ¶ 16).

{¶ 19} We agree with Ventra that Harper failed to establish any facts to show the existence of an employer-employee relationship between herself and Ventra in June of 2017. In the absence of any such evidence, Ventra may not be held liable under either statute, and it is entitled to judgment as a matter of law.

{¶ 20} Moreover, although Harper does not challenge the trial court's grant of summary judgment as to Estep, we note that neither the ADA nor Title VII allow an individual to be held personally liable. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 403-405 (6th Cir.1997). Therefore, Estep was also entitled to summary judgment as to Harper's claims. For these reasons, Harper's first assignment of error is not well-taken.

{¶ 21} In light of our disposition with respect to Harper's first assignment of error, her remaining assignments are moot, and we decline to address them.

9.

**Conclusion**

{¶ 22} We find that no genuine issue of material fact remains to be litigated, that appellees are entitled to judgment as a matter of law, and, viewing the evidence in the light most favorable to Harper, reasonable minds can reach a conclusion only in favor of appellees. Therefore, we find that the trial court did not err in granting appellees' motion for summary judgment. Pursuant to App.R. 24, Harper is ordered to pay the costs of this appeal. It is so ordered.

                                                                     Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

                                        _____
                                                        JUDGE
Thomas J. Osowik, J.

                                        _____
Gene A. Zmuda, P.J.                                 JUDGE
CONCUR.

                                        _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.